is going to do this appellately, pardon me on behalf of the appellant, Mr. Scott Barber. Pardon me on behalf of the appellate, Ms. Erica Thomas. Okay. Mr. Barber, are you prepared to proceed? Good afternoon, Your Honor. Good afternoon. I'm Scott Barber on behalf of the plaintiff appellant. I really don't have much of an oral argument. I rely on my brief, but there is a couple of things I'd like to point out. First of all, neither one of the parties has indicated that they believe the term supplemental benefits is ambiguous. So I don't see any need for the Court to interpret what supplemental benefits means. So this is really a question of whether or not the coverage that the defendant offered to the plaintiff while he was a firefighter is to be the same coverage that they offered to him under placebo when he leaves. So it's basically, if I am looking at this case correctly, we're looking at the two different statutes, too, are we not? Yes. So you're saying they provided him from 2017 to 2023 a certain package, and now they want to change it? Correct. Okay. Yeah. They want to eliminate the HRA, which was an integral part of the coverage they offered to Firefighter Carter while he was employed at the defendant's fire station. They want to argue that this is an interpretation of placebo, and therefore this Court needs to look at whether or not the plan, the HRA, in a light most favorable to the defendant. Well, that's not the case here, and this is just like this Court's decision in Tallarico when the Court decided that the language under investigation was not ambiguous. And now the question was whether Mr. Tallarico was under a criminal investigation. That's a question of fact. And so this Court declined to look at whether or not placebo was ambiguous and just looked to whether or not the fact-supported Officer Tallarico was engaged in a criminal investigation. And so that's the same thing here. The same thing here is we're not arguing about supplemental benefits. We agree they don't have to provide supplemental benefits. So there's no interpretation of placebo necessary. Now the question is, is the HRA part of the basic plan? Well, it's part of the only plan. Well, that was my question, Mr. Barber, is you have the Benefits Act and then you have the HRA. Yes, ma'am. What do we follow? Okay, so the HRA is... Do they conflict with each other? No, because I'll tell you, like Tallarico, the question is not what the supplemental benefit mean. The question is whether or not this HRA is a supplemental benefit to the plan that they provided to the firefighter when he was there and they must continue after he suffers a catastrophic injury. So there's no question and they admit it. I'm hearing new content that's part of the health insurance plan, as that term is used in placebo. Yes. So they have to provide the basic health plan that they were providing at the time he was injured. At the time he was injured, they offered this high deductible insurance plan and to offset that high deductible, they offered the HRA and that was the agreement of the parties. Right. That's what they offered. That's what the firefighters accepted. And so now they got the plan by taking out the HRA. But in the Benefits Act, there are no supplemental benefits. They don't talk about supplemental benefits, right? Right. They don't define what a supplemental benefit is, but it's a supplemental benefit. We agree that they don't have to provide supplemental benefits. So the question now is, is this HRA part of the basic health plan? And does PACEBA demand that the employee be paid or, excuse me, that he be provided the health insurance plan that he had at the time of his injury? Yes. Like which language? I think it's in the middle section. An individual whose entire premium is paid in accordance with this shall be offered by the employer the choice of any health insurance plan currently available, or excuse me, plan available to currently employed, that middle part? Yes, ma'am. So it's the plan. But, I mean, I guess my concern is that, one, I don't see anything in PACEBA that requires that whatever he got right after his catastrophic injury. That's the case law. Interpreting PACEBA is very clear that they have to continue the same coverage they were providing so that he doesn't suffer a second injury when he's hurt and he needs a plan. So the purpose of PACEBA — Well, the cases do say that's the policy behind PACEBA, is to provide him with continuous health coverage. But I don't see anything in the plain language, one, that requires that it be the same as he was at the time he was injured. And the second part is my concern is that using the plain, ordinary meaning of health insurance plan, that it might mean the plan with the big deductible, and my further concern is that the HRA might be a supplemental benefit. Well, this court held in Tallarico, the purpose of Section 10 is to continue the provision of employer-sponsored health insurance coverage for a public safety employee and his or her family when the employee is catastrophically injured or killed. Right. So part of the employer-sponsored plan is the HRA, which the employer funds with its own money. Isn't that supplemental, though? No, no, because the whole plan they offered to him, and it's the only plan they offered to him, is the insurance policy with the high deductible. But that's the only plan they have. Exactly. Isn't it? That's the only plan they have there, one plan. Right, and that's why they have to continue that plan, because it's the basic plan. It's the only plan. So it's not like they have several plans. This is it. This is it. And so they offered this to the firefighters as an agreement to take this high deductible health insurance plan, but don't worry about it, guys and ladies. We will supplement it with the HRA. How about public policy counsel? I love that argument, Judge, because public policy, these guys, these firefighters, these first responders, these public safety employees are putting their health and their sometimes lives on the line in return for pay and that health insurance plan coverage that was offered to them when they were hired and they continue to have while they're hired. Yeah, nobody argues that they're not entitled to that while they're hired, but how about them when they retire? Well, that's the problem, because if they know, if this case sets precedent, which I think it probably will, if this case sets precedent and all the other first responder employers can yank this type of a benefit as a part of their plan away from their high risk employees, they may think twice about entering a building on fire. They may think twice about tackling a suspect. If they know they tackle this guy, they go down. The insurance policy they had when they tackle this guy and they go down is now gone and all they're left with is this high deductible insurance plan. That's an argument for the General Assembly, isn't it? We don't make policy here. Well, you don't, but if this case sets precedent, that's going to be followed by all of the other employers at risk of safety in place, and they admit it. They said, look, offering cheap insurance was the way of the employers. So they're already abusing the process, trying to get away with the least they can get away with. The legislature, and this is enacted afterwards, they expanded coverage to say you can pick any policy. Well, employers of first responders can fix that real easy like they do and just have one policy. So they get to save the money on high premium payments by having a high deductible, pushing that off on the employees, the first responders, the safety employees, while they're working, and then they suffer an injury in the line of duty, which is a requirement of PCEBA, responding to an emergency, which is a requirement of PCEBA, and then they get this high deductible insurance policy with no HRA. So that's going to quickly spread among the firefighters and first responders and safety employees. So I think it is public policy. The legislature has expressed their intent to include more benefits than less benefits, and so I think that the legislature is tipping off these cheap insurance employers to say, look, we can't do this anymore. You guys are gutting the purpose of the act, which is protect. So I think the case is safe. We don't want the employee to be injured again while his benefits have been terminated. We want that continuous coverage into his disability time. Most departments or a lot of departments have multiple policies that they can choose from, correct? It's been my experience, some do, yes. Okay. And what it's been is, you know, so the firefighter employee or first responder, right, safety employee guy, in this case it's a firefighter, right, let's say he chooses the least expensive policy. He chooses this one, okay? But there's a better one and maybe a third one, a Cadillac policy, right? So the legislature said, look, he had this cheap policy all along, but if he gets hurt in the line of duty, we're protecting that guy or that firefighter or that person. I keep saying guy because it's my guy. He's a guy in this case. I just don't want them misconstruing himself. So anyway, right? So they say, look, we don't want this person to be hurt. So he chose the bigger policy. He has a right to choose a bigger policy. Good for him, right? He's off injured and now his career is over with. So, well, we're going to let him pick the policy they have. Well, everybody's going to do this. We don't have another policy. This is it. So you're going to get this high deductible, but we'll cover it with the HRA. Then when you're hurt and you need it most, guess what? You don't have the HRA anymore. And so if we could pass this question of whether or not it's a placebo issue in terms of construing the placebo act, okay, and we follow the logic of Tallarico, which is nobody's arguing this is ambiguous. We agree. They don't have to provide supplemental benefits. And Tallarico, was he investigating a crime? Here is this policy, is this HRA part of the coverage? Now, that's kind of a mixed question of law and fact, I think. The policy says it's integrated. I guess I see it as de novo. I think, you know, the trial court saw it as a statutory construction. I see it as de novo. And I didn't mean to interrupt, but I'm also concerned about the language from Bremer that we have to construe placebo in favor of the municipality. Look, if you buy their – Even if it is a Supreme Court case. Right. But if you agree with the argument that it's an interpretation of placebo, right, what part – where do they argue anywhere that the term supplemental benefit is ambiguous? And you need to tell us what that means. Well, doesn't Section 10.820.320.10 specifically say the term health insurance plan does not include supplemental benefits that are not part of the basic group health insurance? It does. And we don't dispute that. So how do you distinguish that? I mean, I know you don't dispute it, but tell me how what I'm reading doesn't tell us that he's not entitled to that supplemental benefit. Sure. So we agree, right? We all agree on that. So the question then, the term health insurance plan, okay, does not include supplemental benefits. They're not a part of the basic group. Well, first of all, okay, the question is what is a supplemental benefit? So you're trying to say then this supplemental benefit, if you will, this credit card, is not a supplemental benefit. Correct. It's part of this health insurance. Right. And if you look at the case law interpreting contracts, right, this is an agreement between the parties. And the agreement was we'll give you the high deductible plan, don't worry about it, we'll cover you with the HRA. Firefighters say, okay, that's our plan. That's our coverage. And so they accept that, okay? So it's not a supplement, and it says, excuse me, that are not a part of the basic group health insurance plan. Well, this is part of the basic health insurance plan. They wouldn't take it if it wasn't there because they have this $13,000 deductible. And so don't worry about the $13,000 deductible. We've got the HRA. That's part of the plan. And is it the basic plan? Of course it is because it's the only plan. So that's why PSEBA is not the interpretation of PSEBA is not at issue, at least the defendant didn't put it at issue. They're just saying you have to follow NORAC and say you have to interpret PSEBA in a light most favorable to the defendant. But we're not interpreting PSEBA. We know it's a supplement. Now the question is, is this a supplemental benefit? The HRA plan provides that the HRA is offered alongside of the medical group plan. Right. In the brief, I argue, the plaintiff argues, that alongside, okay, if you read it all together, which the court should have done at the trial court, and what we need to do here is read it all together, okay? So it's alongside, your employer's contribution is alongside and integrated with the basic, the Blue Cross and Blue Shield. They want to limit plan to just the Blue Cross and Blue Shield and they argue, well, lookit, there's nothing in the Blue Cross and Blue Shield policy. Okay? So they're confusing policy with the overall plan. Yeah, I'm not looking at the policy as much as the Benefits Act versus the HRA. The Benefits Act, you mean PSEBA? Yes. Yeah. Okay. And again, we're not arguing supplemental benefits. The question is, is this a supplemental benefit or isn't it? Right. That's a whole different issue. You don't have to look at it in the light most favorable to the defendant and that's what the trial court did. You're merging it into one plan. Well, they did. They did. I'm not. Yeah. That's the plan they offered. That's the coverage they offered. Go ahead, Mr. Barber. I'm sorry that we're… My time's up, Your Honor. No, I've got 30. I've got 38. Yeah, so, I mean, that's what our brief says, and I just wanted to emphasize that nowhere in their argument do they say supplemental benefit is ambiguous. So you don't need to know what it – I mean, the question is, is this a supplemental benefit? We say it's not because it's integrated with the HRA. That's what they offered at one policy. That's the only policy that they offered. Everybody agreed that was the deal until – and they paid Mr. Carter for six years. As soon as he got placebo, now all of a sudden their lawyer says, well, this is a supplemental benefit. And from that point on, now it's a supplemental benefit in their eyes. And we're hoping the appellate court could straighten that out. Thank you, sir. Thank you. Any further questions, Justice Miller? Justice Miller. Thank you. Thank you, Your Honor. Ms. Thomas, we'll be on you.  Thank you. May it please the Court, Mr. Barber? I'd like to start out with the statute. There's a couple of key phrases that, in the appellee's opinion, settle the matter before the Court. Citing 2820 ILCS 320-10A, approximately the third and fourth line, the statute says an employer – starts out an employer who employs a full-time law enforcement officer who suffers a catastrophic injury or is killed in the line of duty shall pay the entire premium of the employer's health insurance plan. Premium. It goes on about the middle of paragraph A, and it restates, an individual whose entire premium is paid in accordance with this section. And then at the very end of that same paragraph, it says, the term health insurance plan does not include supplemental benefits that are not part of the basic group health insurance plan. Now, he is saying that the HRA is not a supplemental benefit. I'm thinking that he's saying so because it was kind of part of the plan. He's been getting it since 2017 through 2023, that it became a part of this insurance plan. What do you say to that? So, it is not part of the plan. It is, in fact, a supplemental benefit. And I'd like to point the court to page A of the appellant's opening brief. He argues, HRA is an arrangement between the district and the firefighters on the payment of the deductible. Blue Cross is not a party to how the deductible is paid. That's, in a nutshell, exactly what the situation is. This is payment of a deductible. It is not payment of the premium. And that is really where Mr. Barber's argument falls apart here. PACEBA does not refer to deductibles. It does not refer to co-pays. Under Mr. Barber's argument, PACEBA should not only provide health insurance, but then provide any out-of-pocket that the person is awarded or incurs under that health insurance. That is not what the Illinois General Assembly had in mind. And, in fact, the case law is very clear that what it had in mind was to provide health insurance to someone who qualifies under PACEBA. Can I ask you, is there any end to the high deductible? I mean, what if it were a health insurance plan that we're offering? Now, I agree, maybe there wouldn't be a big market for it. Maybe it's just a health insurance plan that's offered to municipalities with a PACEBA-like obligation where the deductible is $250,000. And we'll give you an HRA for that. And they get a sweet deal on the insurance with such a high deductible, and the only people who are unhappy are their PACEBA annuitants or however they should be referred to. So that — At some point, I'm afraid, you're undermining the statute. But I disagree with that, and let me tell you why. No level of deductible would undermine the statute. Well, you have to understand that the insurance that is being provided is being provided to the active employee. I see. I know, but they get the HRA. Yeah, right. So, you know, it doesn't really affect them. Well, it doesn't. Oh, I'm sorry. Was there legislation subsequent to this, or subsequent to when he left, that requires if there are more than one policy in a department that they can pick their own policy?  Correct? Yes. Which might preclude the predicament that one would be in with a very high deductible. Well, absolutely. But even beyond that, the district is providing insurance to its employees. It's not providing insurance to the occasional employee that might get placebo down the road. They don't want — they're not trying to cheat their employees. They're trying to provide a benefit here. And I didn't understand what you said. They're not providing it to somebody who might get placebo down the road? They're not — when they're deciding what policy to go with, they're not thinking about the occasional placebo person that may or may not come. I mean, in this case, Fox Lake had never had a placebo recipient before. So they were — when they were picking their insurance policy, it wasn't like they were sitting in a closed, dark room trying to figure out how to — I mean, it's the best thing they did. Yeah. That would be kind of irrelevant to the statutory interpretation. Right. Right. But my question was really posed towards the statutory interpretation. So there's no level of deductible would affect the statutory terms? Well — No level. But I was trying to answer that question. The reason that that assertion is illogical is because it would assert that the district is not trying to provide for its current employees, that they would have a $250,000 deductible for their current employees is nonsensical. That is — it's a great benefit to have health insurance, and they want to make sure that their employees are covered and are taken care of. And so — But not their former employees. And about their — let's talk about that. As of 2025, the district — it's in the record at C270 and 271. The district has paid over $150,000 for Mr. Carter's health insurance premium since he was awarded PACEVA. And on page 271, it says that the district is paying approximately $876 a month for his coverage. Now, that's not a small benefit. That's an excellent benefit. Additionally, if you look at the policy, the Blue Cross Blue Shield plan covers preventative health care even before the deductible is met. So it is a large benefit to Mr. Carter in this case. And so — and obviously it's a large benefit to its current employees as well. And the other obligation or the other interest that the district has here is they are spending taxpayer money. If the language of PACEVA, which we assert, does not contain direction to pay deductible, to pay co-pays, to pay anything beyond a premium of the employer's health insurance plan, they're misusing taxpayer funds. And they are not wanting to do that, obviously. That's a public policy argument. But on the other hand, council has a public policy argument that it will make it less likely the firefighters are going to give it their all if they know they're going to go into a building and do some risky behavior and then end up being disabled and not getting this additional benefit. Well, the interesting part about that is that not every firefighter or police officer who is injured in the line of duty and is granted line of duty disability pension benefits is entitled to PACEVA. And if they're injured in the line of duty and they're disabled for line of duty, they don't get... Not automatically. They have to prove that they were injured while responding to an emergency. That's what we said, in line of duty. No, it's different. So they have to say that they were injured in the line of duty. Responding to an emergency. That's right.  And so line of duty for fire, I mean, line of duty can be, I lifted a heavy box in the bay because I was... He does have a line of duty catastrophic injury. He does. We are not contesting that he doesn't. But what I'm saying is that not all injured firefighters or police officers are entitled to PACEVA. Okay. So if they're doing a drill, they would be in line of duty not catastrophic. They're not entitled. The Supreme Court has, you know, passed those here as well. But certainly, you know, at first blush, you're closer to that. Yes. Your argument is that counsel is reading into statute words that are not expressed there. That's exactly right. Yeah, it is that simple. And his repeated statement that we're not talking about, you know, the interpretation of the statute and the word supplemental benefits, I think that's exactly what we're talking about. Is this HRA a supplemental benefit? And if the determination is yes, it is a supplemental benefit, then I believe the PACEVA statute is plain as day. Okay. How about the fact that he was given it from 2017 to 2023, and then all of a sudden it stops? Sure. And that is unfortunate. The district, again, this is not a frequent occurrence, these PACEVA benefits. The district said they're not asking for. Clawback, right? Yeah. Yeah, that's exactly right. The district realized. So the state of Illinois started sending out forms in, I don't know, I want to say 21, 22, asking for public agencies to tell them who was receiving PACEVA benefits. And that is when it was discovered that he was receiving beyond what he was entitled to. He was getting life insurance as well. He was getting life, he was getting vision, he was getting dental. And interestingly, the only thing we're arguing about today is the HRA. You know, I don't have an explanation for that. But, yes, he was getting a lot of extra benefits. And so we advised him of that. We extended it through the rest of the calendar year. We asked him if he wanted to be heard on it. He did not show up at the meeting to be heard on it. And so we changed. You know, it is a situation where the district had to weigh what it was legally obligated to do with taxpayer funds versus whether it was inconvenient for Mr. Carter. And Mr. Carter was receiving benefits that he was not entitled to. Anything further? No. Anything further? No, thank you. Thank you very much. Thank you. Mr. Brower, any feedback?  Thank you. So a couple of things. First of all, my client, Mr. Carter, is the only person on their payroll getting placebo. They don't like it. That's what we're here about. They did this for six years. He was getting life, he was getting dental, he was getting vision. We agree, supplement. Okay? We agree those are supplemental. The plan is, here's your policy with Blue Cross and Blue Shield, and here's our HRA to cover the high deductible. That's the plan. Okay? There's nothing in placebo that needs to be looked at in terms of interpreting. If you went to Blue Cross and Blue Shield and said, let me see Mr. Carter's plan, what would it look like? Typical Blue Cross Blue Shield plan. It wouldn't have a placebo in it. I don't understand your question. It wouldn't have an HRA.  Because the plan is, the employer-sponsored plan is, you get the Blue Cross Blue Shield plan with the high deductible and we'll compensate you for the high deductible with the HRA. That's the plan. Okay? They're focusing it only on the policy. And they're saying, well, we're paying the premium for the policy. So they, and she said, look it, counsel said, they paid $876 a month for a premium for the firefighter, his wife, and his kids. I don't know about you guys, but that's pretty inexpensive. That's a pretty inexpensive premium. I'm not saying it's not a benefit. What I'm saying is, that reflects how high that deductible is. And the plan is the plan. Right? So let me just read this. This is on page five of our brief. The act was enacted to protect officers who have been forced into retirement by a line of duty injured. That's us. And, Your Honor, Shostak, you had said a couple of times, there's two requirements of the placebo. One, you get hurt in the line of duty. And two, it's responding to an emergency. So you can get hurt in the line of duty, get a duty disability pension, but it wouldn't be placebo. Like you said, Your Honor, you're in a training class and you get hurt. Okay? That wouldn't be placebo. So we want to protect these guys who put their health and their safety and their lives on the line, responding to emergencies. Okay, so it says here, it is designed to ensure that the termination of employment, whether by death or injury, responding to an emergency, does not additionally cause the termination of the family, employer, sponsor, what? Health insurance policy? No. Health insurance coverage. And the coverage in this case is the high insurance deductible policy with the plan. Now, they point in their brief that, well, the Blue Cross and Blue Shield plan doesn't mention the HRA. I don't care. That's their policy. The sponsored plan is the HRA that they contribute funds to. But is the HRA, and you're going to say, then the HRA is not a supplemental benefit. Exactly. That's what you're positioning. Because it's part of the plan. It's part of the coverage. It's offered as a one-package deal that they offer to the firefighters and they agree to. Now, his employment was terminated, and it did additionally cause the termination of the family's employer-sponsored health insurance coverage. Sure. He still got this policy of this ridiculously high deductible that reduces the premiums for four people down to $176 a month. Now, if the fire department, Fox Lake, brought in three or four other policies that he can choose and the deductible was lower, would we still be having this conversation? Well, we might, because the revision to the act which allows the firefighter, the safety worker, to choose was enacted after Mr. Kyler was awarded benefits. Well, it seems from reading that, even if it was instituted afterwards, it doesn't apply here because they only have one plan. And that's going to be precedent. Yeah. We're going to fix the legislature offering Cadillac policies to guys who were driving Pintos their whole career. We're just going to offer one policy. And as they admitted in their own brief, employers were abusing PSEBA by offering cheap insurance. Well, how does it get any cheaper than this? And it's the only policy. Guess what? There is no choice to pick a better policy after you've been injured. Thank you very much. You've been injured protecting the citizens of our district. But guess what? Now your insurance policy, yeah, you get the policy, but you don't get the same plan. And that's what PSEBA was designed to prevent, and that's what all the case law says. He gets the same coverage. His policy isn't terminated as coverage. I'm sorry. His coverage isn't terminated because his employment was, especially guys who are getting injured, you know, catastrophically in the line of duty. I see where you're coming from. Anything further? That's his moment. Thank you very much for your time. Thank you, Your Honor. Thank you. Thank you, folks, for your time. The case will be taken under consideration. A decision will be rendered in due course. We are adjourned for the day.